1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LAURIN DAVIS,                          No.  2:24-cv-1790-DC-SCR

12                  Plaintiff,

13          v.                              FINDINGS AND RECOMMENDATIONS

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                    Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II

20   of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow, the

21   undersigned recommends GRANTING Plaintiff's motion for summary judgment and DENYING

22   Defendant's cross-motion.

23                          **I.  PROCEDURAL BACKGROUND**

24          Plaintiff applied for DIB on July 10, 2019, alleging disability beginning April 27, 2017.

25   Administrative Record ("AR") 32.[2]  The application was disapproved initially on September 6,

26

27   _____

     [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
     who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); *Bowen v. City of New
28   York*, 476 U.S. 467, 470 (1986).
     [2]  The AR is filed as ECF No. 7 (AR 1 to AR 3491).

                                            1

2019 and on reconsideration on January 6, 2020. AR 32. On April 5, 2021, ALJ Roxanne Fuller presided over a telephonic hearing on Plaintiff's challenge to the disapprovals. AR 47-81 (transcript). Plaintiff appeared with Kay Tracy as counsel and testified at the hearing, during which he amended his disability onset date to March 14, 2018. AR 32, 53-54. Vocational Expert ("VE") Sherry Kristal-Turetzky also testified. AR 76.

On May 26, 2021, the ALJ issued an unfavorable decision, finding Plaintiff "not disabled" under the Act. AR 32-41 (decision), 42-46 (exhibit list). On June 28, 2022, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. AR 5-10 (decision and additional exhibit list).

Plaintiff initiated this action on June 26, 2024. ECF No. 1. The parties filed cross-motions for summary judgment based on the AR filed by the Commissioner, but no reply brief was filed. ECF Nos. 12 (Plaintiff's summary judgment motion), 15 (Commissioner's summary judgment motion).[3]

## II. FACTUAL BACKGROUND

Plaintiff was born on July 14, 1968, and accordingly was, at age 49, a younger individual under the regulations as of the date last insured, March 31, 2018. AR 40; *see* 20 C.F.R §§ 404.1563(d). Plaintiff has a ninth-grade education and can communicate in English. AR 298, 300. He worked as a delivery driver from 2005 to 2008, an independent contractor for a medical specimen delivery company from January 2010 to January 2011, and a delivery driver again from 2011 to 2014. AR 301. Asserted conditions include lower back pain, pain down his left arm, pinched nerves in his neck and left shoulder, an umbilical hernia, xiphoid process pain and swelling, and general difficulty sitting, standing, or walking for prolonged periods. AR 299.

////

////

---

[3] Plaintiff did not file a timely motion for summary judgment. On June 11, 2025, the undersigned issued an Order to Show Cause ("OSC") as to why this case should not be dismissed for failure to prosecute. ECF No. 10. Plaintiff subsequently filed his motion for summary judgment and separately responded to the OSC. ECF No. 13. Based on the explanation in Plaintiff's response, the OSC is discharged.

### III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive[.]'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *see also Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

The court will not reverse the Commissioner's decision if it is based on harmless error,

which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quotation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

DIB is available for every eligible individual who is "disabled."  42 U.S.C. § 423(a)(1)(E). Aside from blind individuals over the age of 55, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

*Id.*, §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

*Id.*, §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

*Id.*, §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

4

1  *Id.*, §§ 404.1520(a)(4)(v), (g).

2      The claimant bears the burden of proof in the first four steps of the sequential evaluation

3  process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

4  disabled"); *Bowen*, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis,

5  the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can

6  engage in work that exists in significant numbers in the national economy."  *Hill v. Astrue*, 698

7  F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

8                          **V.  THE ALJ's DECISION**

9      The ALJ made the following findings:

10         1. The claimant meets the insured status requirements of the Social
           Security Act through March 31, 2018.
11
12         2. The claimant did not engage in substantial gainful activity during
           the period from his amended alleged onset date of March 14, 2018
13         through his date last insured of March 31, 2018 (20 CFR 404.1571
           *et seq.*).

14         3. Through the date last insured, the claimant had the following
           severe impairment: degenerative disc disease (20 CFR 404.1520(c)).
15
16         4. Through the date last insured, the claimant did not have an
           impairment or combination of impairments that met or medically
17         equaled the severity of one of the listed impairments in 20 CFR Part
           404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and
           404.1526).
18
19         5. After careful consideration of the entire record, the undersigned
           finds that, through the date last insured, the claimant had the residual
20         functional capacity to perform light work as defined in 20 CFR
           404.1567(b) except the claimant is subject to the following
21         limitations occasional climb ramps or stairs, but never climb ladders,
           ropes, or scaffolds; and occasional balance, stoop, crouch, kneel, or
22         crawl.

23         6. Through the date last insured, the claimant was unable to perform
           any past relevant work (20 CFR 404.1565).

24         7. The claimant was born on July 14, 1968 and was 49 years old,
           which is defined as a younger individual age 18-49, on the date last
25         insured (20 CFR 404.1563).

26         8. The claimant has a limited education (20 CFR 404.1564).

27         9. Transferability of job skills is not material to the determination of
           disability because using the Medical-Vocational Rules as a
28         framework supports a finding that the claimant is "not disabled,"

                          5

whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 14, 2018, the amended alleged onset date, through March 31, 2018, the date last insured (20 CFR 404.1520(g)).

AR 34-41.

## VI.  ANALYSIS

Plaintiff raises only one issue: That the ALJ erred in discrediting his subjective claims about the severity of his pain.  As explained below, the ALJ failed to provide specific, clear, and convincing reasons for discrediting Plaintiff's statements about his frequent need to lie down for extended periods to relieve his back pain.

### A.  Governing Law on Subjective Pain Testimony

Evaluating a claimant's subjective testimony is a two-step process.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the pain or fatigue itself is not required.  *Id.*  Second, if the claimant succeeds in providing objective evidence of the impairment and "there is no evidence of malingering," the ALJ can only reject the claimant's testimony about the severity of such symptoms if there are "'specific, clear and convincing reasons for doing so.'"  *Id.* at 1014-15 (internal citations omitted); *see also Smartt v. Kijakazi*, 53 F.4 489, 494 (9th Cir. 2022) (applying this standard even "[w]hen objective medical evidence is inconsistent with a claimant's subjective testimony").

While an ALJ's credibility finding must be properly supported and sufficiently specific to

6

1    ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective

2    statements, an ALJ is also not "required to believe every allegation" of disability. *Fair v. Bowen*,

3    885 F.2d 597, 603 (9th Cir. 1989).  So long as substantial evidence supports an ALJ's credibility

4    finding, a court "may not engage in second-guessing." *Thomas*, 278 F.3d at 958.

5         Evaluating the "intensity and persistence" of the symptoms of an impairment will involve

6    considering all available evidence, including "medical history, the medical signs and laboratory

7    findings, and statements about how… symptoms affect" the plaintiff.  20 C.F.R. § 404.1529(a).

8    Relevant factors include:

9            (ii) The location, duration, frequency, and intensity of your pain or
             other symptoms; […]
10

11           (iv) The type, dosage, effectiveness, and side effects of any
             medication you take or have taken to alleviate your pain or other
12           symptoms;

13           (v) Treatment, other than medication, you receive or have received
             for relief of your pain or other symptoms; [and]

14           (vi) Any measures you use or have used to relieve your pain or other
             symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes
15           every hour, sleeping on a board, etc.);

16    20 C.F.R. § 404.1529(c).  As to the fourth and fifth factors (i.e., "iv" and "v" directly above), the

17    ALJs may consider "unexplained, or inadequately explained, failure to seek treatment or follow a

18    prescribed course of treatment." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (quoting

19    *Fair*, 885 F.2d at 603); *see also Plummer v. Berryhill*, Case No. 2:16-cv-00753-AC, 2017 WL

20    2972461 at *6 (E.D. Cal. July 12, 2017) (agreeing with the ALJ that "failure to pursue

21    recommended treatment discredited…[plaintiff's] subjective testimony").

22         An ALJ should not penalize claimants "for attempting to lead normal lives in the face of

23    their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  An ALJ can, however,

24    cite a claimant's daily routine to the extent that it is inconsistent with the degree of disability that

25    plaintiff alleges. *See Molina*, 674 F.3d at 1113 (even where claimant's everyday activities reflect

26    difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the

27    extent that they contradict claims of a totally debilitating impairment).

28    ////

1     **B.  Plaintiff's Relevant Testimony**

2        Plaintiff testified that when working as a delivery driver for a winery, he usually had to lift

3 200-pound wine barrels and 45-pound cases by himself.  AR 54-55.  When delivering office

4 supplies, he often had to lift 20-30 55-pound cases per day.  AR 56.

5        Plaintiff then testified that a back surgery had involved the installation of "hardware."  AR

6 58.  The surgery left him more limited and with more prominent pain.  AR 59, 72.  He discussed

7 removing the hardware with doctors, but was unsure whether that additional surgery has been

8 approved and hesitates to proceed with it because his earlier surgery resulted in "major stress

9 issues" regarding hospitals.  AR 58.  Plaintiff disputed pre-treatment notes saying that he could

10 lift up to 50 pounds at the time.  AR 59.  His doctor never approved his return to work after the

11 surgery.  AR 59.

12        Plaintiff also had two surgeries on one knee and a third on the other, all of which predate

13 his back surgery.  AR 65.  Plaintiff also had an issue regarding his "Z plate"—cartilage

14 connecting his rib cage—where it will sometimes get aggravated and protrude painfully for a few

15 weeks before receding.  AR 65-66.

16        As to his daily activities as of March 31, 2018, Plaintiff went to the movies where he

17 could use the heated chairs to relax his back.  AR 59-60.  He went every afternoon for this

18 purpose as a sort of physical therapy, seeing basically every movie that came out in 2018 as a

19 result.  AR 60.  He also walked for 30-45 minutes every morning, taking a break every quarter

20 mile.  AR 60, 64.

21        Plaintiff's activities at home included washing dishes, cleaning the hardwood floors with a

22 Swiffer, and vacuuming an area rug.  AR 61.  The days on which he cleaned the house were

23 scheduled, but he was still able to go on his walk and to the movies on those days.  AR 61-62.

24 Cleaning the house did not take the whole day, but it was hard enough on his back that he

25 sometimes had to sit down for a break between tasks.  AR 62.

26        On his best days, Plaintiff could lift 15-20 pounds.  AR 62.  Some 15-20 minutes of light

27 exercise in the morning, like lifting three-pound dumbbells and doing leg exercises while sitting,

28 would elevate his pain for the next 3-4 hours.  AR 64-65.  Plaintiff tried to sleep starting at 9:00

p.m. each night, but woke 3-4 times per night from the pain, sometimes not falling back asleep again. AR 63, 74. Plaintiff estimates he could sit in a kitchen chair for 20 minutes before having to reposition, for a total of four hours in an eight-hour workday. AR 69-70. "Repositioning" would include switching between chairs, all of which would need some cushion. AR 70. Even with two pillows, which he used when on the computer, he probably could not sit for more than one hour consecutively. AR 70-71.

Plaintiff's pain averaged a 5 out of 10 through 2018. AR 66. Aside from resting in theater chairs and stretching on warm chairs in general, Plaintiff also used aqua therapy and pain medications prior to the COVID-19 pandemic. AR 66. The pain medication included steroid injections, about 15-20 between 2014 and 2018, along various portions of the spine. AR 66-67. Those provided only short-term relief. *Id*. Plaintiff mostly kept taking those injections because the doctor kept saying he should. AR 67.

Because his back pain was constant no matter his position, he doubted that he could do any job with eight-hour workdays, even without lifting. AR 72. Lying down was the least painful position, and he would lie down for 10-30 minutes whenever his back pain became unbearable. AR 73. He estimates that the cumulative time spent on his back was 2-3 hours in an eight-hour period, not counting naps. AR 73-75. He did search for another delivery job in January 2018 when in need of money, but he accepts that it was "wishful thinking" to believe he would have lasted longer than a day if hired. AR 74, 76.

**C. The ALJ's Findings**

The ALJ found that the medical evidence from the relevant period was not consistent with the alleged intensity, persistence, and limiting effects of his conditions.[4] AR 37. Since the April 2014 injury that led to his back pain, treatment included daily stretching exercises, medication management, and Motrin for pain relief. AR 37. During a March 2018 examination with his worker's compensation medical provider, Plaintiff reported continued lower back pain despite rare to occasional use of Motrin, Robaxin, and THC, though without adverse effects. AR 37,

---

[4] In describing the ALJ's findings, the undersigned also notes certain additional details found in the source documents cited by the ALJ.

1265-66.  Plaintiff admitted to little activity, occasional stretching, and a lot of sitting.  AR 37, 1265.  During the physical examination, Plaintiff exhibited a full range of motion without pain, despite stiffness, tenderness in the sciatic area, a normal gait, intact sensory and motor function, a lack of any muscle wasting, and an ability to squat normally and walk painlessly from heel to toe.  AR 37, 1266.

Physician's Assistant Ann Marie DaVigo and Dr. Rajpreet Dhesi diagnosed Plaintiff with "lumbago with sciatica, left side."  AR 37, 1266.  They advised Plaintiff that his pain would get worse if he sat down too much and did not perform stretching exercises.  AR 37, 1265-66.  They recommended that he swim and focus on improving core strength, but he was not motivated to do so.  AR 37, 1265.  Dr. Dhesi and Ms. DaVigo also prescribed occasional use of Tramadol for pain management.  AR 37, 1266.

In May 2018, Plaintiff reported continued back pain, and intermittent leg pain, that was not effectively treated by Tylenol, Mortin, or Tramadol.  AR 37, 2396.  He rejected additional injections and asserted that Norco was the only medication that worked, but Dr. Dhesi and Ms. DaVigo declined to prescribe it.  AR 37, 2396.  Plaintiff reported that he could still perform most activities of daily living but was not exercising as Dr. Dhesi and Ms. DaVigo had recommended.  AR 37, 2396.  The results of the physical examination were mostly unchanged.  AR 37, 2397.  Plaintiff was told to stop Tramadol but take Motrin and Tylenol as needed.  AR 37, 2397.

Plaintiff underwent a lumbar spine surgery (specifically, a L5-S1 global arthrodesis) in December 2018, almost nine months after the date last insured.[5]  AR 38, 1780.  In May 2019, Dr. Roderick Sanden reported that the lower back and abdominal incisions had both healed well.  AR 38, 1780.  Despite a 45-degree range of motion and broad-based gait, Plaintiff was expected to have a good outcome.  AR 38, 1780.  Dr. Sanden prescribed Norco and Robaxin.  AR 37, 1780.  In the months that followed, Plaintiff was recommended physical therapy, aquatic therapy, and trigger point injections.  AR 38 (citing AR 1726, 1794-96, 1813, 2957-61).

Upon considering both the medical record and Plaintiff's testimony about daily activities,

---

[5]  Only disabilities existing before the date last insured establish entitlement to DIB.  *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008).

the ALJ found that the record "supports finding limitations … to light exertion, with occasional climbing of ramps or stairs, never climbing ladders, ropes, or scaffolds, and occasional balancing, stooping, crouching, kneeling, or crawling[,]" but no further limitations.  AR 38.  While noting that Plaintiff "may lie down during the day due pain" [sic], AR 37, the ALJ did not mention Plaintiff's claim that he typically has to lie down for two to three hours during an eight hour period.  Nor did the ALJ specifically address whether and how Plaintiff's claims about needing to lie down were inconsistent with the other record evidence.

**D.  Issue-by-Issue Analysis**

1. Whether the Medical Evidence Demonstrates Physical Impairment is Not in Dispute

Plaintiff first argues that various objective records demonstrate he suffers from back conditions that would cause pain.  ECF No. 12 at 10 (citing AR 352, 368, 863, 1736).  He highlights nerve conduction studies in 2015 and 2020, both of which yielded abnormal results confirming a bilateral L5 lumbar radiculopathy.  ECF No. 12 at 10-11 (citing AR 552, 3032).

In Title II cases, the question is whether a plaintiff "was either permanently disabled or subject to a condition which became so severe as to disable…[him] *prior* to the date upon which…[his] disability insured status expires." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (emphasis added).  The probative value of the 2020 nerve conduction study—almost two years after the DLI—is therefore limited.  *Compare* AR 34 (noting DLI of March 31, 2018) *with* AR 3032 (notes of nerve condition study).  In any case, the ALJ specifically found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]"  AR 37.  The ALJ thus expressly found that Plaintiff had satisfied step one of the two step inquiry for evaluating subjective claims of pain.  Step two issues are addressed below.

2. The ALJ Did Not Provide Specific, Clear, and Convincing Reasons for Discounting Plaintiff's Testimony

Given that the ALJ did not identify evidence of malingering, the ALJ could only reject Plaintiff's testimony about the severity of his symptoms through "specific, clear and convincing reasons." *Garrison*, 759 F.3d at 1014-15 (internal citations omitted).  This is true even though the

1   ALJ identified certain "objective medical evidence" in the record to be "inconsistent with

2   [Plaintiff's] subjective testimony." *Smartt*, 53 F.4 at 494.  The ALJ's analysis in this domain was

3   in error because it failed to specifically address Plaintiff's claimed limitations and because some

4   of the evidence cited by the ALJ does not undermine Plaintiff's claimed limitations.

5          In declining to adopt all of Plaintiff's asserted limitations, the ALJ did not state what those

6   asserted limitations are.  The ALJ did not mention the extent to which Plaintiff claims to need to

7   lie down and did not offer any reasoning specific to lying down.  This despite Plaintiff testifying

8   to the severity of those limitations and despite the VE testifying that a person with such

9   limitations could not work.  AR 73-74, 80.  The reviewing court is left to wonder whether the

10   ALJ in fact had in mind the limitations the Plaintiff claims are truly disabling.  *See Lambert v.*

11   *Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (noting that the ALJ must "specifically identify the

12   testimony from a claimant she or he finds not to be credible and ... explain what evidence

13   undermines that testimony") (cleaned up).  The ALJ's reasoning accordingly lacked specificity.

14          Quoting *Lambert*, Defendant argues that the ALJ was not required "to perform a line-by-

15   line exegesis of the claimant's testimony" or "draft dissertations when denying benefits."  ECF

16   No. 15 at 5; 980 F.3d at 1277.  An ALJ must still, however, provide more than "non-specific

17   conclusions" that testimony is inconsistent with the record, even if accompanied by "a relatively

18   detailed overview of …[Plaintiff's] medical history[.]"  *Id.* at 1277-78.

19          The ALJ also discusses evidence that cannot fairly be read as inconsistent with Plaintiff's

20   asserted limitations.  As Plaintiff argues, the ALJ improperly discounted his testimony that he

21   needs to lie down for two to three cumulative hours in an eight-hour day, which would leave him

22   unable to perform any full-time job according to the VE.  ECF No. 12 at 12; AR 73-74, 80.

23   Plaintiff attributes this to the ALJ's citation of daily activities like cleaning the house and going to

24   the movies.  ECF No. 12 at 12.  He argues that the ALJ unfairly "use[d] part of Plaintiff's

25   testimony against him" while discrediting the part that would support a disability finding.  *Id.*

26          Whether the ALJ actually relied on Plaintiff's activities of daily living to discredit

27   Plaintiff's testimony is unclear.  The ALJ's decision merely summarizes those activities before

28   finding that "[t]he overall evidence supports finding limitations … to light exertion, with"

1   additional restrictions. AR 38. To the extent the ALJ relied on Plaintiff's activities of daily

2   living to discredit the claim that Plaintiff must lie down for significant periods of the day due to

3   pain, those activities do not clearly and convincingly support such a conclusion. Plaintiff's ability

4   to perform simple chores around the house—washing dishes, Swiftering floors, vacuuming an

5   area rug—is not inconsistent with his assertion that he must also lie down for long periods. Nor

6   does Plaintiff's testimony that he walked 30-45 minutes every morning, with breaks every quarter

7   mile, show that he does not need to lie down after sitting or standing.[6] AR 60-61, 64. Going to

8   the movies to sit in a recliner chair for therapeutic purposes also does not reasonably cast doubt

9   on Plaintiff's subjective claims. In short, Plaintiff's activities of daily living cannot support the

10  discounting of Plaintiff's specific claims about his need to regularly lie down.

11        As Defendant notes, the ALJ conceivably could have discounted Plaintiff's testimony

12  based on his failure to follow recommended courses of treatment for his back pain. *See Bunnell*,

13  947 F.2d at 346. When Plaintiff reported back pain in March 2018, he was advised that his pain

14  would worsen if he did not stretch or exercise as recommended. AR 37, 1265-66. In May 2018,

15  Plaintiff reported that not only did he fail to exercise, he used a Norco pain reliever over the

16  medication that Dr. Dhesi and Ms. DaVigo had prescribed. AR 37, 2396. The ALJ might have

17  relied on any of these facts to find Plaintiff's statements about lying down to be exaggerated.

18  However, as discussed above, the ALJ did not engage in any specific analysis concerning

19  Plaintiff's claimed need to lie down for long periods. *See Lambert*, 980 F.3d at 1277 (noting that

20  ALJ did not "identify what parts of the claimant's testimony were not credible and why") (quoting

21  *Treichler v. Comm'r of Social Sec.*, 775 F.3d 1090, 1103 (9th Cir. 2014)). Courts must

22  distinguish between "reasonable inferences drawn from the ALJ's summary of the evidence" and

23  the actual "reasons the ALJ asserts" for a credibility determination. *See Lambert*, 980 F.3d at

24  1278 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). Here, there is not

25  enough to infer that Plaintiff's failure to follow recommended treatment protocols constituted a

26

27  _____
    [6] Plaintiff testified that the reason he lies down for hours per day is because the stress on his
28  spine leads to back pain after just sitting for an hour in a good chair with pillow, sitting for 15
    minutes in a bad chair, or standing for more than ten minutes. ECF No. 15 at 5; AR 71-72.

1   clear and convincing reason to discount his subjective claims.

2        The ALJ's analysis of Plaintiff's subjective claims does not satisfy the specific, clear, and

3   convincing standard.

4        **E.  The Error Is Not Harmless and Merits Remand**

5        Error does not merit remand when harmless, defined as when it is "clear from the record

6   that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins*,

7   466 F.3d at 885 (internal quotation omitted).  The "relevant inquiry…is not whether the ALJ

8   would have made a different decision absent any error…it is whether the ALJ's decision remains

9   legally valid, despite such error." *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162

10  (9th Cir. 2008).  When an ALJ fails to provide reasons for discrediting a portion of subjective

11  testimony, as here, the decision is not legally valid because the Court has no basis on which it can

12  uphold the decision.  The error is not harmless.

13       Plaintiff argues the Court should remand the matter for an award of benefits due to

14  Defendant's "lengthy mishandling" of the matter.  ECF No. 12 at 13.  The relevant question is not

15  whether proceedings were unreasonably delayed thus far, which Plaintiff does not demonstrate,

16  but whether the delay caused by remanding for further proceedings cannot be justified.

17  Specifically, the credit-as-true rule permits ordering an ALJ to award benefits if:

18
19       (1) the record has been fully developed and further administrative
         proceedings would serve no useful purpose; (2) the ALJ has failed to
20       provide legally sufficient reasons for rejecting evidence, whether
         claimant testimony or medical opinion; and (3) if the improperly
21       discredited evidence were credited as true, the ALJ would be
         required to find the claimant disabled on remand.

22  *Garrison*, 759 F.3d at 1020.

23       As noted above, the ALJ could articulate reasons for discounting Plaintiff's testimony

24  based on the record as is, despite having failed to do so.  *See supra* VI.D.2.  The ALJ is entitled to

25  make this credibility determination for herself.  Remand for further proceedings is the appropriate

26  remedy.

27  ////

28

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

    1.  Plaintiff's motion for summary judgment (ECF No. 12), be GRANTED;

    2.  Defendant's cross-motion for summary judgment (ECF No. 15) be DENIED;

    3.  This matter be REMANDED to the Commissioner for further consideration consistent with this order; and

    4.  The Clerk of the Court enter judgment and close this case.

    These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, either party may file written objections with the court.  Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Local Rule 304(d).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 26, 2025

 

 

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

15